## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**DELLAINA MERRITT,**

   **Plaintiff,**

**v.**                                    **CASE NO. 3:15-cv-286/MCR/EMT**

**ESCAMBIA COUNTY, FLORIDA,**
**a political subdivision of the**
**State of Florida**

   **Defendant.**

_____/

## <u>ORDER</u>

Plaintiff Dellaina Merritt filed this suit against Defendant Escambia County, Florida claiming that the County failed to compensate her for hours she worked in excess of forty hours per week, as required by the Fair Labor Standards Act ("FLSA").  Pending before the Court is Defendant's Motion for Summary Judgment, ECF No. 33, and Plaintiff's Motion for Partial Summary Judgment as to liability, ECF No. 34.  Having fully considered the record and the arguments of the parties, the Court finds the motions are due to be denied.

## I.      Background[1]

Merritt began working for Escambia County in May 1998 as an Equipment Operator I.  In April 2000, she was promoted to the position of Field Supervisor for the Roads and Bridges Division of Public Works, the position she currently holds. Field Supervisors are responsible for supervising various levels of Equipment Operators and Road Correctional Officers ("RCOs").  Merritt's "crew" is made up of eight Equipment Operators and three RCOs.  Her crew is responsible for maintaining approximately 600 holding ponds throughout the county.  In addition to supervising their crew, Field Supervisors are required to perform on-call duties.  If called out, Field Supervisors, including Merritt, are paid a minimum of two hours of compensation, and if the callout requires more than two hours, they are compensated at "straight time" for all of the time actually worked, which is equivalent to one times the hourly rate.  Each employees' paycheck is broken down into an hourly rate in order to calculate the straight time overtime.

Field Supervisors are required to clock in and clock out at work.  Thomas Turner, Director of Human Resources, explained that the clock in and out requirement is used so that sick leave, annual leave, and overtime compensation can

---

[1] For the limited purposes of this summary judgment proceeding, the Court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Martin v. Brevard Cty. Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008) (internal marks omitted).

be accurately calculated. *See* ECF No. 33-1, Turner Aff. ¶ 3–5; *see also* ECF No. 33-1, Overtime and Compensatory Time in Lieu of Overtime Pay Policy. Merritt testified that even if there is nothing to be done at work, she would still get paid and that if her work was finished she was "free to take leave and go on home" so long as it was approved by her Program Manager, Aaron Smith. ECF No. 33-1, Merritt Dep. at 56.

The official Job Description for a Field Supervisor lists the applicable "salary range," in hourly, biweekly, monthly, and annual rates. ECF No. 33-6, Job Description for Field Supervisor at 28. The Job Description also lists a variety of duties, including "making hiring, termination, and disciplinary recommendations." *Id.* Merritt testified that although she is in charge of her crew, she does not hire or fire anyone. Further, Merritt testified that she does not have the authority to discipline her crew and has never been asked for a recommendation as to whether particular employees should be promoted. Instead, according to Merritt, Field Supervisors make discipline reports to a Program Manager who then makes the reports to Wesley Moreno, Deputy Director of Public Works. Merritt also testified that she has initiated disciplinary actions against her crew members in the past and that she has "made a recommendation or input about terminating an employee." ECF No. 33-1, Merritt Dep. at 41. Further, she testified that she determines which employees are assigned to particular jobs within her crew.

Merritt filed this suit in order to recover unpaid overtime wages under the FLSA. Specifically, she claims she was compensated for hours she worked in excess of forty hours per week at one times her hourly rate, as opposed to one and one-half times her hourly rate, as required by the FLSA. Defendant claims it is entitled to summary judgment because Merritt is a "bona fide executive," and thus exempt from receiving overtime wages under the FLSA. *See* 29 U.S.C. § 213(a)(1).

## II.    Legal Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, "shows that there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a); *see also Martin*, 543 F.3d at 1265. Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts[] and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (en banc). The Court will not make credibility determinations or weigh the evidence presented on summary judgment. *Frederick*

*v. Sprint/United Mgm't Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001).  When the Court reviews cross-motions for summary judgment, the standard of review does not differ from that applied when only one party files a motion.  *U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 972 F. Supp. 2d 1339, 1341 (N.D. Ga. 2013) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)).  The Court must consider each motion on its own merits, "resolving all reasonable inferences against the party whose motion is under consideration." *Id.*

## III.   Discussion

Under the FLSA, employees are entitled to receive overtime pay at one and one-half times their regular rate for any hours worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1).  The FLSA exempts from the overtime requirement "any employee employed in a bona fide executive, administrative, or professional capacity." *Id.* at § 213(a)(1).  An employee is properly classified as a "bona fide executive" if:

> (1) [s]he is compensated on a salary basis at a rate of not less than $455 per week; (2) [her] primary duty is management of the enterprise in which [s]he is employed or of a customarily recognized department or subdivision thereof; (3) [s]he customarily and regularly directs the work of two or more other employees; and (4) [s]he has the authority to hire or fire other employees, or [her] suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.

*Watkins v. City of Montgomery*, 919 F. Supp. 2d 1254, 1259 (M.D. Ala. 2013) (quoting 29 C.F.R. § 541.100(a)) (internal marks omitted).  Because "entitlement to an overtime exemption under the FLSA is an affirmative defense," the defendant bears the burden of proof. *Id.* (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008)).  Moreover, exemptions should be narrowly construed and applied "only to those employees who are 'plainly and unmistakably' within the terms and spirit of the [FLSA]." *Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). Merritt does not dispute that her primary duty is management or that she customarily and regularly directs the work of two or more employees.  Therefore, only the first and fourth requirements of the "bona fide executive" exemption are at issue in this case—whether she was compensated on a salary basis and whether she had authority to hire or fire employees or make recommendations which were given particular weight.

Regarding the first requirement—whether Merritt is compensated on a salary basis at a rate of not less than $455 per week—it is undisputed that her pay exceeds the $455 threshold.  The only dispute, therefore, is whether she is compensated "on a salary basis." According to the FLSA regulations:

> An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which

> amount is not subject to reduction because of variations in
> the quality or quantity of the work performed.

*Avery v. City of Talladega, Ala.*, 24 F.3d 1337, 1340 (11th Cir. 1994) (quoting 29 C.F.R. § 541.602) (formerly 29 C.F.R. § 541.118(a)).  In applying the "salary basis" test, some circuits have held that policies "penalizing an employee for absences of less than one day . . . indicate that employees subject to these policies are not salaried employees." *Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 658 (10th Cir. 1995) (citing *Kinney v. District of Columbia*, 994 F.2d 6, 11 (D.C. Cir. 1993); *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 617 (2d Cir. 1991)).  However, other circuits, including the Eleventh Circuit, hold that "unless an employee's pay, as opposed to their compensatory leave, is actually docked, such a policy does not preclude exemption." *Id.* (citing *Atlanta Professional Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 805 (11th Cir. 1991); *McDonnell v. City of Omaha*, 999 F.2d 293, 297 (8th Cir. 1993); *York v. City of Wichita Falls*, 944 F.2d 236, 242 (5th Cir. 1991)).  Deductions in pay may also be made, consistent with salaried status, if "the employee is absent 'from work for a day or more for personal reasons other than sickness or accident.'" *Avery*, 24 F.3d at 1340 (citing 29 C.F.R. § 541.602).  Specifically, public employees "shall not be disqualified from exemption under [the executive exception] on the basis that such employee is paid according to a pay system . . . established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public

agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used." 29 C.F.R. § 541.710.  Further, "[a]n employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement" as long as there is a guarantee of the minimum weekly-required amount paid on a salary basis. *Id.* at § 541.604.

To establish that Merritt was a salaried employee, Defendant points out that the Job Description for her position, Field Supervisor, lists a "salary range" that exceeds the statutory requirement. ECF No. 33-6, Job Description for Field Supervisor at 28.  Moreover, Thomas Turner, testified that the salary of a Field Supervisor starts at $40,352.  ECF No. 33-1, Turner Dep. at 23.  Defendant also notes that Merritt agreed she was paid for eight hours of work each day, even if there was nothing to be done on a particular day. ECF No. 33-1, Merritt Dep. at 56.  In response, Merritt argues that she should be classified as an hourly employee because Field Supervisors are required to clock in and out of work each day.[2]  The Court disagrees and finds that this requirement does not undermine Merritt's classification

---

[2] Merritt also presented testimony of several other Field Supervisors who testified that they understood their job to be hourly.  However, Merritt has not shown her hours were ever reduced because of work availability.

as a salaried employee. *See e.g.*, *Arrington v. City of Macon*, 973 F. Supp. 1467, 1471 (M.D. Ga. 1997) (finding that "[r]equiring exempt employees to keep time sheets does not in itself defeat exempt status in the case of public employees"). Defendant's requirement that Field Supervisors must clock in and out is not inconsistent with the FLSA because, as Defendant notes, such a policy is "premised on the concept of public accountability—that governmental employees should not be paid for time not worked, and that there is a need to be accountable to the taxpayers for the expenditure of public funds." *Kuchinskas v. Broward Cnty.*, 840 F.Supp. 1548, 1556 (S.D. Fla.1993) (quoting 56 Fed.Reg. 45,824, 45,825 (1991)). Defendant states that this is the case for Escambia County, as reflected in the Escambia County Code of Ethics Policy, which states that "the public [needs to] have confidence in the integrity of its County government." *See* ECF No. 33-1, Exhibit A. The record also contains several memorandums presented to employees regarding the details of overtime wages, which are consistent with the County's public accountability objectives. *See* ECF No. 33-6, Lackey Memorandum for Standby Compensatory Time, County Policy for Overtime and Compensatory Time.

Merritt also argues that being compensated for hours worked in excess of forty hours each week (at straight-time compensation) shows that she is an hourly employee. The regulations provide, however, that "additional compensation besides the salary is not inconsistent with the salary basis of payment." *Aaron v. City of*

*Wichita, Kan.*, 54 F.3d 652, 658 (10th Cir. 1995); (citing 29 C.F.R. § 541.604) (formerly 29 C.F.R. § 541.118(b)); *see also* 57 Fed. Reg. 37666, 37673 (indicating that overtime compensation falls within the meaning of the type of extra compensation allowed by the statute). Similarly, Merritt argues that the fact she received longevity pay shows she is an hourly employee. However, as Defendant notes, longevity pay is an increase in compensation based on a percentage of the annual salary. The increase is calculated at an hourly rate because it impacts the rate she receives for straight time overtime, but the increase itself is based on the underlying salary, which is further evidence that she is a salaried employee. *See* ECF No. 44-1, Turner Aff. ¶ 2.[3]

The Court agrees with the Sixth Circuit Court of Appeals that when applying the salary-basis test "[w]hat matters is that deductions may not be made for time when work is not available if the employee is ready, willing, and able to work." *Acs v. Detroit Edison Co.*, 444 F.3d 763, 768 (6th Cir. 2006) (internal marks omitted). Merritt has presented no evidence that any deductions were made from her compensation based on the availability of work, and she has failed to demonstrate that she ever suffered from a reduction in pay as a result of the quantity or quality of

---

[3] For example, "[a]pplying the 6% longevity pay to $19.07 yields $1.14 per hour. The longevity pay of $1.14 per hour is added to the $19.07 which resulted in a regular rate of pay for Ms. Merritt of $20.21 per hour." ECF No. 44-1, Turner Aff. ¶ 4. Merritt's straight time overtime pay rate "would then be $20.21 per hour for all hours worked over forty hours." *Id.* Calculating the rate, however, does not change based on number of hours worked. *Id.* at ¶ 3.

the work performed.  In sum, Merritt is paid a predetermined amount that is "not subject to reduction because of variations in the quality or quantity of the work performed." *See* 29 C.F.R. § 541.602.  Therefore, the Court concludes Defendant has satisfied the requirements of the salary basis test.  *See Atlanta Professional Firefighters Union*, 920 F.2d at 805 (holding that because there was no evidence that the plaintiffs ever suffered from reductions in pay because of the quantity or quality of work performed, the plaintiffs were considered salaried employees).

Defendant also argues that Merritt qualifies as a "bona fide executive," exempt from overtime, because she "ha[d] the authority to hire or fire other employees, or [her] suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees [were] given particular weight." 29 C.F.R. § 541.100(a)(4).  In deciding whether this exemption applies, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." *In re Family Dollar FLSA Litig.*, 988 F. Supp. 2d 567, 577 (W.D.N.C. 2013) (quoting 29 C.F.R. § 541.105).  The employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee

does not have the authority to make the ultimate decision as to the employee's change in status." *Id.*

Although Merritt's job description includes the authority to "mak[e] hiring, termination, and disciplinary *recommendations*," Wesley Moreno, Deputy Director of Public Works, testified that Field Supervisors do not have the actual authority to hire or fire employees. *See* ECF No. 33-6, Job Description for Field Supervisor at 28; ECF No. 33-1, Moreno Dep. at 45.  The testimony of other Field Supervisors confirms this. *See* ECF No. 33-2, Avery Dep. at 12–14.  The issue, therefore, is whether Merritt's recommendations regarding any changes in the status of an employee are "given particular weight."[4]

Defendant presented Moreno's testimony that Field Supervisors initiate disciplinary actions by reporting disciplinary matters to human resources. ECF No. 33-1, Moreno Dep. at 45.  Moreno's affidavit stated that Field Supervisors' "input and cooperation is critical," as they would be called as witnesses to testify if any employee appealed a disciplinary action that resulted in suspension or termination. ECF No. 33-1, Moreno Aff. ¶ 5.  Indeed, Merritt admitted that she had initiated a disciplinary action against a crew member in the past and had made a recommendation about terminating an employee. ECF No. 33-1, Merritt Dep. at 41.

---

[4] Because the Court is reviewing cross-motions for summary judgment, the Court must resolve all reasonable inferences against the party whose motion is under consideration.  *Am. Bankers Ins. Grp.*, 408 F.3d at 1331.

However, there is no evidence in the record showing that these recommendations were followed or given particular weight.  Moreover, even if the recommendations were followed, "evidence of one employment recommendation that was followed" is insufficient to establish that an employee's recommendations were given particular weight. *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 677 (11th Cir. 2009)[5] (holding that because there was evidence that some of the employee's recommendations were followed while others were not, there was a genuine issue of fact as to whether his recommendations were given particular weight).  As a result, the Court finds that whether Merritt's employment recommendations were "given particular weight" is a question of material fact that precludes summary judgment. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986) (holding that while the question of whether particular activities exclude employees from overtime benefits under the FLSA is a question of law, the question of how employees spend their time is a question of fact).

Summary judgment for Defendant based on the bona fide executive exemption "is appropriate only where the four prongs of the [ ] test are met as a matter of law." *Barreto*, 331 F. App'x at 677.  As the employee, Merritt need only show that one of the four prongs is not satisfied in order to prevail on her motion for

---

[5] While unpublished opinions are not considered binding, they may be considered as persuasive authority.  *See* 11th Cir. R. 36-2; *see also United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000).

summary judgment.  Because neither party has satisfied its burden, the Court cannot grant summary judgment on either motion.

Accordingly, Defendant's Motion for Summary Judgment, ECF No. 33, is **DENIED**, and Plaintiff's Motion for Partial Summary Judgment, ECF No. 34, is **DENIED**.  Trial will be scheduled by separate order.

**DONE AND ORDERED on this 25th day of March, 2017.**

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**